**John Ahlstrom, a Minor, by Fred Ahlstrom, His Father and Next Friend, Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, Defendant-Appellee.**

**Gen. No. 50,708.**

First District, Third Division.

July 21, 1966.

Rehearing denied September 12, 1966.

[redacted]

Milroy R. Blowitz, of Chicago (Leon C. Wexler, of counsel), for appellant.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from an order dismissing this case for want of prosecution, and from the order denying the plaintiff's motion to reinstate the case.

On June 11, 1963, the case was called for trial by the assignment judge of the circuit court. At 3:45 p. m. on that day the case was assigned to Judge Pavlik for trial. Jack Levin, an attorney associated with Nat P. Ozmon, who was to be the trial attorney in this case, proceeded to the courtroom of Judge Pavlik and advised him that Nat P. Ozmon was engaged before Judge Napoli and was at that time in the process of giving a closing argument. He advised the judge that Mr. Ozmon would complete the oral argument that afternoon and the judge set the case for 10:00 a. m. on June 12, 1963, being the next day. The affidavits of Nat P. Ozmon and Jack M. Levin state that prior to the assignment of this case to Judge Pavlik the assignment judge assigned the case of Gordon v. City of Chicago to Judge Paschen for trial. The affidavits do not indicate how long prior the Gordon case had been assigned to Judge Paschen for trial, but in the argument on the motion Mr. Ozmon stated that the Gordon case had been assigned the same day. Nat

265

P. Ozmon was the attorney prepared to try both cases. Judge Paschen set the case of Gordon v. City of Chicago to begin trial at 10:00 a. m. on June 12, 1963, being the same hour and day on which this case was set before Judge Pavlik for trial. The next morning, June 12, 1963, Mr. Ozmon went to Judge Paschen's courtroom at 10:00 a. m., feeling, according to his affidavit, that the case of Gordon v. City of Chicago could be disposed of in a short time by settlement. After leaving Judge Paschen's courtroom he arrived in the courtroom of Judge Pavlik at approximately 10:40 a. m., and was there shown a signed draft order to the effect that the instant case had been dismissed for want of prosecution.

The affidavit of Jack Levin showed that from 9:30 a. m. to 11:00 a. m. he was occupied before the assignment judge. Charles R. Winkler, another attorney associated with Mr. Ozmon, was before Judge Hermes from 9:30 a. m. to 11:00 a. m. The affidavits of Nat P. Ozmon and Jack M. Levin do not state on what day Jack Levin was occupied before the assignment judge, nor on what day Charles R. Winkler, another attorney, was before Judge Hermes. However, the affidavits showed that Milroy R. Blowitz, a partner of Mr. Ozmon, was ill, and not present in the office on the morning of June 12, 1963, and further alleges there were no other attorneys available from the office of Nat P. Ozmon. Mr. Ozmon further set forth in his affidavit that his delay until approximately 10:40 a. m. on the morning of June 12, 1963, was unforeseen and inadvertent. The affidavit also showed that the plaintiff is a minor and has sustained substantial injuries.

On the same day a notice of a motion to reinstate was served upon the defendant and was presented to Judge Pavlik at 2:00 o'clock. The record discloses that after this case was dismissed by Judge Pavlik another case had been assigned to him and was also dismissed for want of prosecution prior to 10:40 a. m. on June 12, 1963.

266

A third case was assigned to Judge Pavlik on June 12, 1963, and had already been set for trial at 10:00 o'clock on June 13, 1963. Judge Pavlik, during the argument on the motion, advised the plaintiff that he had been ready to proceed with trial of this case on June 11, 1963, at 3:45 p. m., when the case was first assigned to him, and upon being apprised of Mr. Ozmon's engagement before Judge Napoli in a closing argument which would be concluded the same afternoon, he held the instant case for trial on June 12, 1963, at 10:00 o'clock. Judge Pavlik during the course of the argument also advised the attorney for the plaintiff that all reasons for not going to trial immediately are resolved by the assignment judge; that a case assigned for trial is for the purpose of proceeding with the trial. The plaintiff then requested Judge Pavlik to reserve his ruling until plaintiff produced an authority Leong v. Railroad Transfer Service, 302 F2d 555, the citation of which he did not have with him. Mr. Ozmon then requested that a draft order be entered but the trial judge said that would not be necessary. The following then transpired:

"Mr. Ozmon: Could we set this for—Say, Friday morning and I will see you get the case before, but, set for 9:30 Friday morning?

"The Court: Yes and we can dispose of it promptly.

"Mr. Ozmon: Is that all right with you, Counsel?

"Mr. Brandt: Fine.

"The Court: Okay."

This concluded the hearing on June 12, 1963.

The record does not disclose any proceeding between June 12, 1963, and June 16, 1965, more than two years later, when the plaintiff called up his motion to vacate the dismissal order filed on June 12, 1963. When additional argument was heard on the motion the plaintiff asked

and obtained leave to file an additional affidavit in support of his motion. The additional affidavit was that of Milroy R. Blowitz, which stated that he was a partner in the law firm of Blowitz and Ozmon, the firm representing the plaintiff at the time of the dismissal of this case on June 12, 1963; that this case was prepared for trial and to his knowledge was ready for trial with subpoenas prepared for the various witnesses and the plaintiff instructed to be in his office at 9:00 a. m. on June 12, 1963, and on information he stated that the plaintiff was in his office as instructed. Attached to Mr. Blowitz's affidavit was a copy of a letter dated July 18, 1963, addressed to Judge Pavlik regarding this case, notifying the judge that there had been no ruling on the pending motion. This was sent as a reminder that the motion was still pending.

The plaintiff contends: (1) It is an abuse of discretion to hold a matter under advisement for two years and then refuse to reinstate it; (2) the desire to eliminate the court backlog is to promote justice, and (3) the non-negligent plaintiff should not be denied his day in court.

The plaintiff argues that the motion to reinstate the case was filed the same day. Approximately one month after the court took the matter under advisement the plaintiff's attorney sent a letter to the court asking it to remember that this matter was pending and no ruling had yet been made. He also argues that if the action of the court to which application is made is unjust and oppressive and has resulted in a substantial injury to the appellant such action should be reversed on review. Goldman v. City of Chicago, 54 Ill App2d 437, 203 NE2d 703. However, in the Goldman case, supra, the opinion shows a disagreement as to what happened to the case when it was called for trial. The plaintiff there contended that because of the engagement of defendant's counsel there was an agreement among the parties and the court that the case be put on the dormant calendar, thereby en-

titling plaintiff to personal notice before it could be restored to the trial call. The assignment judge stated that his record showed that the case had been put on the hold call, in which event there would be no necessity for notice. The court there stated that where there is a genuine dispute as to whether the case had been placed on the hold call or on the dormant calendar, the proper exercise of discretion requires the court to avoid punctilious enforcement of the hold call procedure. In the case before us there was no misunderstanding as to when this case was set for trial. The plaintiff understood it was set for 10:00 a. m. on the morning of June 12, 1963, and, in the plaintiff's attorney's affidavit, the attorney stated that his failure to respond at 10:00 a. m. in this case was unavoidable, since it was absolutely necessary that he attempt to handle the case before Judge Paschen as well as the case before Judge Pavlik. He further stated in his affidavit he felt the case of Gordon v. City of Chicago, which was pending before Judge Paschen, could be disposed of within a short period of time without the necessity of a trial. This is not the equivalent of inadvertence, or mistake. He knew at the time he went to Judge Paschen's court that Judge Pavlik was waiting to proceed in this case. He apparently made no effort to advise Judge Pavlik that he had determined to go to another courtroom knowing that this case was to proceed to trial at 10:00 a. m. It is unclear to us how the two cases could have been sent out by the assignment judge for trial by the same attorney on the same day, and since the record is silent on this point, we assume that Mr. Ozmon's associate, who appeared before the assignment judge made no objection. We can also safely assume that the plaintiff was represented before the assignment judge, or the case would have been dismissed for want of prosecution in that court.

The plaintiff's contention that it was an abuse of discretion to hold the case under advisement for two years

and then refuse to reinstate it, is, in our opinion, without foundation. At the hearing held by the court on June 12, 1963, the attorney for the plaintiff offered to give the court the citation of a case which he could not recall. There is nothing in the record to indicate that the plaintiff's attorney at any time during the more than two-year period which intervened gave the court the citation of the authority he had in mind. The citation of the case which he promised to send to the court was Leong v. Railroad Transfer Service, Inc., 302 F2d 555. In that case both attorneys were absent from court on the day the case was called for trial, and the court refused to listen to the reason why the attorneys for both sides were absent from the courtroom. In the case before us the City's representative was in court at 10:00 a. m. on June 12, 1963. There was no misunderstanding on the part of either side as to the time set for trial, and in the concurring opinion of Judge Schnackenberg in the Leong case, supra, the following pertinent language appears:

> "It is conceded that, on a regular trial call, the court announced that this case was held for trial. Every trial lawyer knows what that language means. He is alerted to be ready to proceed immediately when the case is called for trial. . . . If a lawyer, who is told by the court that his case is held for trial, is permitted to remain away from court until persons connected therewith notify him that his presence is required, an unwholesome system, involving favoritism and interfering with the proper discharge of their public duties by the employees involved, will be created."

Furthermore, in the Leong case, supra, one of the controlling factors was that it would be unconscionable that plaintiff's cause of action for serious personal injuries, for which a new suit would have been barred by the statute of limitations, should be dismissed without her

270

personal fault. This same compelling reason is not present in the instant case, and during oral arguments this court was told that because of the minority of the plaintiff the time has not elapsed within which to bring a new action.

The plaintiff argues that the desire to eliminate the court backlog is to promote justice. Of course that is true, but we cannot see how the backlog can be eliminated if each attorney representing a plaintiff were to keep the trial judge waiting for forty minutes while he took care of some other matter. It appears to us to be inexcusable and a direct discourtesy to the court for an attorney not to communicate in some manner to the court that he will be unable to attend. While the affidavits filed here show that he appeared in another courtroom they do not show any effort in any manner to communicate that fact to the trial judge who was waiting and ready to proceed in this case. The first affidavit filed by the attorneys for the plaintiff in support of the motion to vacate the order of dismissal and reinstate the case, states that Charles R. Winkler was before Judge Hermes from 9:30 a. m. to 11:00 a. m. The affidavit fails to show for what purpose Mr. Winkler was before Judge Hermes, or that he was engaged before Judge Hermes. The affidavit further states that "there were no other attorneys available from the office of your affiant, Nat P. Ozmon." We do not understand what is meant by "no other attorneys available." If there were other attorneys in the office, the affidavit does not indicate why they were not available. We cannot see how the conduct of the plaintiff's attorney in this case would tend to eliminate the court backlog or promote justice.

Plaintiff also argues that the nonnegligent plaintiff should not be denied his day in court, and in support of that argument cites the case of Parks v. The City of Chicago, 50 Ill App2d 100, 199 NE2d 830. That case can be of no comfort to the plaintiff, because in that case

the trial court's order denying a reinstatement was affirmed.

In Nordstrom v. City of Chicago, 119 Ill App 465, the plaintiff on his own motion moved to vacate a dismissal of his suit for want of prosecution on the ground of his attorney's negligence. The court denied Nordstrom's motion and said at page 466: "The suit was dismissed at plaintiff's costs upon regular call, and it was discretionary with the trial court whether to reinstate or not."

In Stewart v. Chicago & A. R. Co., 207 Ill App 549, the court sustained the dismissal of a suit because the plaintiff was not ready for trial. On page 552 the court said: "When the court so exercises its discretion in the matter, its action will not be interfered with by a reviewing court, unless there has been a clear abuse of its discretion."

Neither the plaintiff nor the plaintiff's attorney appeared for trial at the appointed hour. If the plaintiff was in the attorney's office at 9:00 a. m. on that morning, as appears upon information in the affidavit of Mr. Blowitz, and no one else was available, there is no reason why the plaintiff or his father could not have been in court at the appointed hour. We advert again to the case of Parks v. City of Chicago, 50 Ill App2d 100, 199 NE2d 830 (abstract opinion). The court said the following:

> "Litigants and their attorneys owe a duty to the court to be ready to proceed with trials in their cases when reached on the trial calendar. This is particularly true today with the great number of pending cases and because of the efforts being made, both by the assignment judge and the trial judges, to cut down the backlog of pending cases. If the plaintiff's attorney in this case was unable to locate his client prior to trial, it became his duty to

272

apprise the court of that fact immediately instead of waiting until the day the case was set for trial.

"If the plaintiff could rely on his affidavit and the affidavit of his attorney in this case, he would be entitled to a vacation of a dismissal order merely because of his failure to appear in court, or by staying away from court on the day the case was called.

"We are of the opinion that the assignment judge did not abuse his discretion when he entered the dismissal order, or when he refused thereafter to vacate said order."

We conclude that there was a duty owing to the court to be ready to proceed with the trial of the case on June 12, 1963, at 10:00 a. m. Having failed in that duty, and having failed to appear, or, in the alternative to inform the court in some manner that the attorney had elected to go to another courtroom, but to expect the court, without any information, to wait for forty minutes for the arrival of the plaintiff's lawyer shows utter disrespect to the court. The court in this case properly exercised its discretion and the judgment is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.